**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **LONE STAR SCM SYSTEMS, LTD.** | **CIVIL ACTION NO.: 6:21-cv-844** |
| **Plaintiff,** | |
| **v.** | |
| **BLUEBIRD INC.,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lone Star SCM Systems, Ltd. files its Complaint against Bluebird Inc. for infringing U.S. Patent Nos. 7,557,711 ("the '711 Patent"), 9,646,182 ("the '182 Patent"), 9,996,717 ("the '717 Patent") and 10,482,293 ("the '293 Patent") (collectively the "Asserted Patents"), demands a trial by jury and alleges as follows:

**PARTIES**

1.      Plaintiff Lone Star SCM Systems, Ltd. ("Lone Star" or "Plaintiff") is a Texas limited partnership with a principal address of 4555 Excel Parkway, Suite 500, Addison, Texas  75001.

2.      Defendant Bluebird Inc. ("Bluebird" or "Defendant") is a corporation organized and existing under the laws of South Korea with its headquarters located at 3F, 115, Irwon-ro, Gangnam-gu, Seoul, Seoul, South Korea.  Bluebird does not reside in the United States.  Bluebird engages in business in Texas, but does not maintain a regular place of business in this state or a designated agent for service of process in this state. This proceeding arises, in part, out of business done in this state. Bluebird may be served with process in South Korea pursuant to the Hague Convention on the Service Abroad of

4823-6607-4102v.2

Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  Bluebird regularly conducts and transacts business in Texas, throughout the United States, and within the Western District of Texas.

3.      Bluebird is one of the world's largest manufacturers and sellers of marking, tracking, and printing technologies, including under the Bluebird brands.

4.      Bluebird makes, imports, offers to sell, sells, and uses the Accused Products, as defined below, in the United States, including in the State of Texas generally and the Western District of Texas in particular.

5.      Bluebird regularly contracts with customers regarding equipment or services that will be provided by affiliates on their behalf.

## JURISDICTION AND VENUE

6.      This action arises under the Patent Laws of the United States, namely, 35 U.S.C. §§ 1 et seq.  This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Bluebird is subject to this Court's general and specific personal jurisdiction because it has minimum contacts within the State of Texas and the Western District of Texas and, pursuant to due process and/or the Texas Long Arm Statute, Bluebird has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Western District of Texas.  Further, Bluebird regularly conducts and solicits business within the State of Texas and within the Western District of Texas, and Lone Star's causes of action arise directly from Bluebird's business contacts and other activities in the State of Texas and in the Western District of Texas.  In addition, Bluebird provides software and support to its end users, including end users in Texas of Bluebird's products

2

that infringe the Asserted Patents, through its Korean-based internet website (such as, for example, its "Business Optimizing Solution" or "BOS" software).

8.      Venue is further proper because Bluebird is not a resident in the United States, and it has committed and continues to commit acts of patent infringement, including making, using, offering to sell, and/or selling Bluebird RFID products ("Accused Products"), including, but not limited to, its Handheld UHF RFID Reader Sled, the RFR900 and RFR900S, its Fixed RFID Reader, the FR900, and its Desktop RFID Readers, the DR900 and DR901 products in Texas and in this district, and/or importing Accused Products into Texas and this district, including by Internet sales and sales via resellers, distributors, and other channels, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this district. Additionally, jurisdiction over Bluebird in Texas is proper under the stream of commerce theory, as Bluebird established a regular distribution channel through which it purposefully directed sales to Texas. Bluebird provided the Accused Products to nationwide distributors who it knew, or should have known, would sell the Accused Products to purchasers in Texas. Still further, Bluebird has software that it makes available for downloading to end users of its devices.  On information and belief, Bluebird provides software pursuant to a software licensing agreement with end users in the Western District of Texas.

4823-6607-4102v.2



Source:  https://www.bluebirdcorp.com/products/RFID-Solutions/Handheld-RFID-Reader/RFR900-for-EF401#1639

## **BACKGROUND**

### **A.  John Volpi's Legacy of Innovation**

9.      John Volpi is a prolific inventor and engineer, having been issued more than forty U.S. patents.  Volpi focused much of his work over his career in various aspects of wireless communications and navigation technologies.   As an engineer at Texas Instruments, and later Raytheon, he worked extensively on developing modern radar technologies, including overseeing the hardware design for long range navigation (LORAN) systems.   He also was instrumental in developing advances in global positioning satellite (GPS) systems and in cellular technology.   His work in cellular technology included ground breaking achievements with smart phone antennas.  Volpi was awarded the prestigious Tech Titans Chief Technology Officer of the Year in 2012.

10.      In 2000, Volpi became the Chief Technology Officer for Incucomm, Inc., a business incubator located in North Texas.  As CTO, Volpi worked with over 100 startups,

guiding young technology companies through their launches and growth.  One of the technology startups with which Volpi worked was Veroscan, Inc ("Veroscan").  Veroscan was started by a group of professionals, including Dr. Jimmy LaFerney, one of the co-inventors listed on the Asserted Patents, interested in tracking various types of items in hospitals and health care facilities, ranging from inventories of hospital supplies, to medical devices or implements used during surgical procedures.  It was through part of his work with Veroscan that Volpi conceived and reduced to practice a number of ideas involving the use of radio frequency identification ("RFID") technology to track items, resulting in over 20 patents, including the Asserted Patents.[1]  While Volpi worked specifically on applying RFID technology within the medical and health care industry, he also recognized the importance and utility of his inventions in the broader field of supply chain management.

11.    Veroscan developed RFID technologies, but it was never successfully made, sold or offered for sale any products.  Indeed, as has been the case with many small technology startup companies, Veroscan was ahead of its time in terms of developing products for which their commercial markets had not yet matured.  As a result, in 2010, Veroscan finally ceased its research and development activities, and instead focused itself on maintaining and continuing to build its portfolio of patented RFID technology.   Around that same time, Veroscan was reorganized and became Medical IP Holdings, LP.  Later, acknowledging that the patented technologies applied to the entire scope of supply chain management and was were limited just to medical applications,

---

[1] In addition to Mr. Volpi, Jimmy D. Laferney and William C. Montgomery also assisted in developing some of the inventions contained in the Asserted Patents, and each is also named as a co-inventor on each patent.

4823-6607-4102v.2

Medical IP Holdings changed its name to Lone Star SCM Systems, LP.

### B. RFID Technology

12.     RFID technology is at the center of the Asserted Patents and the Accused Products here, and in particular, RFID readers with expanded tag reading capabilities. RFID uses electromagnetic fields to identify and track tags attached to objects.  A RFID tag consists of a tiny radio transponder:  a radio receiver and transmitter. When triggered by an electromagnetic interrogation pulse from a RFID reader, the tag transmits digital data back to the reader.  RFID tags are used in many industries.  For example, a RFID tag can be used to track inventory goods; a RFID tag attached to an automobile during production can be used to track its progress through the assembly line; RFID-tagged pharmaceuticals can be tracked through warehouses; and implanting RFID microchips in livestock and pets enables positive identification of animals.

13.     RFID readers generally fall within two types, mobile or portable readers (typically handheld) and fixed or stationary readers.  The mobile readers may be used, for example, by a warehouse employee to track inventory data as the worker moves throughout the warehouse.  On the other hand, a fixed or stationary reader may be installed at a specified place so that information can be tracked as tagged items move past that location.  Key features for all RFID readers include an antenna and a control and processing mechanism that allows the reader to receive and process a signal from a RFID tag attached to an item.

14.     Generally, RFID tags include a microchip that stores and processes information, and modulates and demodulates radio-frequency (RF) signals.

15.     The RFID tag receives a message from a reader and responds with its identification and other information.  This may be as simple as a unique tag identifier, or may contain other product-related information such as a stock number, lot or batch number, production date, or other specific information.  Since tags can be programmed with a unique identifier, the RFID system can discriminate among several tags that might be within the range of the RFID reader and read them simultaneously.

16.     "Bulk reading" is a strategy for interrogating multiple tags at the same time. A group of tagged items are read completely from one single reader position at one time. Bulk reading is a possible use of HF ("High Frequency") (ISO 18000-3), UHF ("Ultra-High Frequency") (ISO 18000-6) and SHF ("Super High Frequency") (ISO 18000-4) RFID tags.  A group of tags has to be illuminated by the interrogating signal just like a single tag.  However, if any of the tags are shielded by other tags, they might not be sufficiently illuminated to return a sufficient response.

17.     The inventions developed by Volpi added features for RFID readers  such as position sensors, multiscan, coherent signal processing, or a user interface, including a touchpad and display.

18.     In 2014, the world RFID market was worth $8.89 billion, up from $7.77 billion in 2013 and $6.96 billion in 2012. These figures include tags, readers, and software/services for RFID cards, labels, fobs, and all other form factors.  The market value is expected to rise from $12.08 billion in 2020 to $16.23 billion by 2029.

### C. Asserted Patents

#### 1. U.S. Patent 7,557,711

19.     On July 7, 2009, the U.S. Patent and Trademark Office (USPTO) issued the '711 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination.  A copy of the '711 Patent is attached hereto as Exhibit "A" and is incorporated herein by reference.  The '711 Patent was originally assigned to Veroscan, which later assigned the patent to Medical IP Holdings, now known as Lone Star SCM Systems.  The '711 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

20.     The '711 Patent is generally directed to an interrogation system and a , methods of discerning RFID objects.  The interrogation system includes a sensing subsystem configured to provide a signal having a signature representing a presence of a RFID object.  The interrogation system also includes a control and processing subsystem configured to discern a presence of a RFID object from the signal and a position sensor configured to provide a location of the RFID object.

21.     The '711 Patent contains 20 claims, including 2 independent claims and 18 dependent claims.  Among these is claim 1, which states:

> An interrogation system, comprising:
>
> a sensing subsystem configured to provide a signal having a signature representing a presence of a radio frequency identification (RFID) object;
>
> a control and processing subsystem configured to discern a presence of said RFID object from said signal; and
>
> a single position sensor configured to provide a location of said RFID object in accordance with a movement of said position sensor with respect to said RFID object.

22.     In addition, claim 3 states:

        The interrogation system as recited in claim 1 further comprising at least one antenna configured to cooperate with said sensing subsystem to provide said signal having said signature representing said presence of said RFID object.

23.     Further, claim 5 recites:

        The interrogation system as recited in claim 1 further comprising an antenna configured to cooperate with said sensing subsystem to provide said signal having said signature representing said presence of said RFID object, wherein at least one of said sensing subsystem, said control and processing subsystem, said position sensor and said antenna assembly is located in a portable interrogator.

24.     Also, claim 6 states:

        The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

25.     Claim 8 further provides:

        The interrogation system as recited in claim 1 wherein said control and processing subsystem is located in a computer system in communication with said sensing subsystem.

26.     Moreover, claim 15 states:

        The interrogation system as recited in claim 1 further comprising another sensing subsystem configured to provide a signal having a signature representing a presence of an object.

        2.  U.S. Patent No. 9,646,182

27.     On May 9, 2017, the USPTO issued the '182 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '182 Patent is attached hereto as Exhibit "B" and is incorporated herein by reference.  The '182 Patent was originally assigned to Veroscan, which later assigned the

9

patent to Medical IP Holdings, now known as Lone Star SCM Systems.  The '182 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

28.     The '182 Patent is generally directed to an interrogator having an antenna designed to receive first and second signals from first and second RFID objects.    The interrogator also includes a control and processing subsystem configured to discern RFID objects from the first and second signals as the antenna moves with respect to the objects.

29.     The '182 Patent contains 22 claims, of which 2 claims are independent and 20 are dependent.  Among these is claim 1, which states:

> An interrogator, comprising:
>
> an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity; and
>
> a control and processing subsystem configured to discern a presence of said first object and said second object from said first signal and said second signal, respectively, as said antenna moves with respect to said first object and said second object.

30.     The '182 Patent also includes claims 3 and 4, which state:

> 3. The interrogator as recited in claim 1 further comprising a sensing subsystem configured to provide said first signal and said second signal having a signature representing said first object and said second object, respectively, from said antenna to said control and processing subsystem.
>
> 4. The interrogator as recited in claim 3 wherein said first object is a first radio frequency identification (RFID) object, said second object is a second RFID object and said sensing subsystem includes a RFID sensing subsystem configured to provide said first signal and said second signal having a signature representing said first RFID object and said second

RFID object, respectively, to said control and processing subsystem to discern a presence of said first RFID object and said second RFID object therefrom without a radio frequency shield therebetween.

31.     Further, claim 6 states:

The interrogator as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

32.     Also, claims 10 and 11 state:

10. The interrogator as recited in claim 1 further comprising a user interface.

11. The interrogator as recited in claim 10 wherein said user interface comprises a touchpad, display and alarms.

33.     Moreover, claim 15 provides:

The interrogator as recited in claim 1 further comprising another antenna tuned to a different frequency than said antenna.

34.     And, claim 16 adds:

The interrogator as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object and said second object.

3.   U.S. Patent No. 9,996,717

35.     On June 12, 2018, the USPTO issued the '717 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '717 Patent is attached hereto as Exhibit "C" and is incorporated herein by reference.  The '717 Patent was assigned to Medical IP Holdings, now known as Lone Star SCM Systems.  The '717 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

36.     The '717 Patent is generally directed to an interrogation system that includes an antenna designed to receive first and second signals from first and second objects.  The interrogation system or also includes a control and processing subsystem configured to discern a presence of the first and second objects from the first and second signals, as the objects move with respect to the antenna.

37.     The '717 Patent includes 2 independent claims and 18 dependent claims, for a total of 20 claims altogether.  Among these is claim 1:

> An interrogation system, comprising:
>
> an antenna configured to receive a first signal and a second signal from a fist object and a second object, respectively, in close unobstructed proximity; and
>
> a control and processing subsystem configured to discern a presence of said first object and said second object from said first signal and said second signal, respectively, as said first object and said second object move with respect to said antenna.

38.     In addition, claim 2 states:

> The interrogation system as recited in claim 1 further comprising a position sensor configured to cooperate with said control and processing subsystem to provide a location of said first object and said second object.

Further, claims 3 and 4 recite:

> 3.   The interrogation system as recited in claim 1 further comprising a sensing subsystem configured to provide said first signal and said second signal having a signature representing said first object and said second object, respectively, from said antenna to said control and processing subsystem.
>
> 4.  The interrogation system as recited in claim 3 wherein said first object is a first radio frequency identification (RFID) object, said second object is a second RFID object and said sensing subsystem includes a RFID sensing subsystem

configured to provide said first signal and said second signal having a signature representing said first RFID object and said second RFID object, respectively, to said control and processing subsystem to discern a presence of said first RFID object and said second RFID object therefrom without a radio frequency shield therebetween.

39.     Moreover, claim 6 states:

The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

40.     Claim 8 further provides:

The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object and said second object.

41.     Claims 9 and 10 provide:

9. The interrogation system as recited in claim 1 further comprising a user interface.

10.   The interrogation system as recited in claim 9 wherein said user interface comprises a touchpad, display and alarms.

42.     Further, claim 14 states:

The interrogation system as recited in claim 1 further comprising another antenna tuned to a different frequency than said antenna.

4.   U.S. Patent No. 10,482,293

43.     On November 19, 2019, the USPTO issued the '293 Patent entitled "Interrogator and Interrogation System Employment the Same" after a full and exhaustive examination.   A copy of the '293 Patent is attached hereto as Exhibit "D" and is incorporated herein by reference.   The '293 Patent was assigned to Medical IP Holdings, now known as Lone Star SCM Systems.   The '293 Patent claims priority back to

13

application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

44.     The '293 Patent is generally directed to an interrogator having an antenna designed to receive a signal from a RFID object.  The interrogator further includes a control and processing subsystem configured to discern the presence the RFID object from the signal.  Finally, the interrogator includes a user interface having a touchpad and a display embodied in a portable configuration.

45.     The '293 Patent contains 22 claims, including 2 independent claims and 20 dependent claims.  Among these, claim 1 states:

> A portable interrogator, comprising:
> an antenna configured to receive a fist signal from a first object;
> a control and processing subsystem configured to discern a presence of said first object from said first signal;
> and a user interface including a touchpad and a display embodied in a portable configuration with said control and processing subsystem and said antenna.

46.     Claim 7 says:

> The portable interrogator as recited in claim 6 wherein said another antenna is turned to a different frequency that said antenna.

47.     Additionally, claim 10 provides:

> The portable interrogator as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

48.     Claim 15 recites:

> The portable interrogator as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object.

49.     And claim 16 says:

The portable interrogator as recited in claim 1 wherein said user interface is embodied in a housing with said control and processing subsystem and/or said antenna.

### D. Bluebird's RFID Products

50.     Bluebird is a global manufacturer of various industrial devices, including both handheld and fixed RFID readers.  Bluebird has approximately 3,000 customers located in 120 different countries, including in the United States and in Texas.  Bluebird introduced its line of handheld RFID readers in 2016, and it released its line of fixed, desktop readers in 2020.

51.     Bluebird's handheld and fixed RFID readers can be found in retail stores, warehouses and distribution centers where they are used to read RFID tags quickly and accurately and increase efficiency for real-time asset tracking and inventory management.  In addition, Bluebird's Tunnel/Box type RFID readers are installed on conveyors or process lines at manufacturing sites and distribution centers.  These devices can reach RFID tag on items and assist with inventory management and defect inspection.  Finally Bluebird's Desktop/POS RFID Readers can be installed on retail store counters where they can assist in sales status management.  They are also used in hospitals to perform pharmaceutical and blood sample management.

52.     Among Bluebird's products that infringe one or more of Lone Star's patents are its Handheld UHF RFID Reader Sled, the RFR900 and RFR900S, its FR900 Fixed RFID Reader, the FR900, and its Desktop RFID Readers, the DR900 and DR901.

15

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,557,711

53.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

54.     Lone Star is the owner of all rights, title and interest to the '711 Patent.  The '711 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

55.     Bluebird has had notice of the '711 Patent at least as early as the filing of this Complaint.

56.     Bluebird has been and now is infringing at least Claim 1 of the '711 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, singularly or in combinations with each other, that incorporate systems and methods according to the '711 Patent.  One example of the Accused Products that infringes the '711 Patent includes the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

57.     For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is an interrogation system.

58.     Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a sensing subsystem configured to provide a signal having a signature representing a presence of a radio frequency identification (RFID) object.   In one embodiment, the sensing subsystem is comprised of an antenna connected to the RFID reader/writer module to provide a signal.

The antenna receives a signal from a RFID object, and the antenna processes that signal to convert it into a new signal of a different wavelength or power intensity before relaying that signal to the Atmel processor.  The new signal has an electronic signature that represents the presence of a RFID object.  In another embodiment, the antenna is separate from the sensing subsystem, but is nonetheless configured to cooperate with the sensing subsystem to provide a signal representing the presence of a RFID object.

59.    The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a control and processing subsystem configured to discern a presence of the RFID object from the signal.

60.    Also, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer contains a position sensor (an accelerometer communicatively coupled to an embedded microprocessor) that provides a location of a tagged object based on the movement of the reader with respect to the tagged object.

61.    The Accused Bluebird Products satisfy all limitations of at least Claim 1 of the '711 Patent.  Bluebird is thus liable for infringement of the '711 Patent pursuant to 35 U.S.C. § 271.

62.    In addition to infringing the '711 Patent directly, Bluebird also induces infringement of the '711 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '711 Patent.

63.    Bluebird further contributorily infringes the '711 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '711 Patent. The infringing

Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

64.     As a result of Bluebird's infringement of the '711 Patent, both direct and indirect, literal and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

65.     Unless a permanent injunction is issued enjoining Bluebird and its agents, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '711 Patent, Lone Star will be greatly and irreparably harmed.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 9,646,182**

66.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

67.     Lone Star is the owner of all rights, title and interest to the '182 Patent.  The '182 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

68.     Bluebird has had notice of the '182 Patent at least as early as the filing of this Complaint.

69.     Bluebird has been and now is infringing at least Claim 1 of the '182 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, either singularly or in combination with each other, that incorporate systems and methods according to the '182 Patent.

70.    One example of the Accused Products that infringes the '182 Patent includes the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

71.    For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is an interrogator.

72.    Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer includes an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

73.    The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer includes a control and processing subsystem (an embedded Atmel microprocessor communicatively coupled to a DSP integrated circuit) configured to discern the presence of a first and second objects from first and second signals, respectively, as the antenna moves with respect to the first and second objects.

74.    The Accused Products satisfy all limitations of at least the '182 Patent Asserted Claims.  Bluebird is thus liable for infringement of the '182 Patent pursuant to 35 U.S.C. § 271.

75.    In addition to infringing the '182 Patent directly, Bluebird also induces infringement of the '182 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the Accused Products, which embody one or more of the inventions claimed in the '182 Patent.

76.     Further, Bluebird contributorily infringes the '182 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '182 Patent. The Bluebird Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

77.     As a result of Bluebird's infringement of the '182 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

78.     Unless a permanent injunction is issued enjoining Bluebird and its agents, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '182 Patent, Lone Star will be greatly and irreparably harmed.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 9,996,717**

79.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

80.     Lone Star is the owner of all rights, title and interest to the '717 Patent.  The '717 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

81.     Bluebird has had notice of the '717 Patent at least as early as the filing of this Complaint.

82.     Bluebird has been and now is infringing at least Claim 1 of the '717 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making,

using, importing, selling or offering to sell to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '717 Patent.   An example of Bluebird products that infringe the '717 Patent includes, but is not limited to, Bluebird's fixed RFID Readers, such as, for example, the Bluebird FR900 Fixed RFID Reader.

83.    The Bluebird FR900 Fixed RFID Reader is an interrogation system.

84.    Further, the Bluebird FR900 Fixed RFID Reader has an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

85.    Further, the Bluebird FR900 Fixed RFID Reader has an embedded processor, a DSP IC and a RFID IC that serves as the control and processing subsystem configured to discern a presence of first object and second objects from first and second signals, as the first and second object move with respect to the antenna.

86.    The Accused Bluebird Products satisfy all limitations of at least the '717 Patent Asserted Claims.   Bluebird is thus liable for infringement of the '717 Patent pursuant to 35 U.S.C. § 271.

87.     In addition to infringing the '717 Patent directly, Bluebird also induces infringement of the '717 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '717 Patent.

88.    Further, Bluebird contributorily infringes the '717 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '717 Patent. The

Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

89.     As a result of Bluebird's infringement of the '717 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

90.     Unless a permanent injunction is issued enjoining Bluebird and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '717 Patent, Lone Star will be greatly and irreparably harmed.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,482,293

91.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

92.     Lone Star is the owner of all rights, title and interest to the '293 Patent.  The '293 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

93.     Bluebird has had notice of the '293 Patent at least as early as the filing of this Complaint.

94.     Bluebird has been and now is infringing at least Claim 1 of the '293 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '293 Patent.   One example of the Accused Products that infringes the '293 Patent includes the Bluebird

RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

95.     For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is a portable interrogator.

96.     Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has an antenna configured to receive a first signal from a first object.

97.     The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a control and processing subsystem (an embedded microprocessor and DSP integrated circuit) configured to discern a presence of the first object from the first signal.

98.     Also, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a user interface including a touchpad and a display. The touchpad and display are embodied in a portable configuration with the control and processing subsystem and antenna.

99.     The Accused Bluebird Products satisfy all limitations of at least the '293 Patent Asserted Claims.   Bluebird is thus liable for infringement of the '293 Patent pursuant to 35 U.S.C. § 271.

100.   In addition to infringing the '293 Patent directly, Bluebird also induces infringement of the '293 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the

4823-6607-4102v.2

Accused Products, which embody one or more of the inventions claimed in the '293 Patent.

101.    Further, Bluebird contributorily infringes the '293 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '293 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

102.    As a result of Bluebird's infringement of the '293 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

103.    Unless a permanent injunction is issued enjoining Bluebird and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '293 Patent, Lone Star will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Lone Star respectfully requests that this Court enter:

A.      A judgment in favor of Lone Star that Bluebird has infringed the '771, '182, '717 and '293 Patents;

B.      A permanent injunction enjoining Bluebird and its officers, directors, agents, servants affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert therewith from infringing the '771, '182, '717 and '293 Patents;

4823-6607-4102v.2

C.     A judgment and order requiring Bluebird to pay Lone Star its damages adequate to compensate for the infringement of the '711, '182, '717 and '293 Patents, but in no event less than a reasonable royalty for the use made of the inventions by Bluebird, together with interest and costs as fixed by the court as provided under 35 U.S.C. § 284;

D.     Any and all other relief to which Lone Star may show itself to be entitled.

## **DEMAND FOR JURY TRIAL**

Lone Star, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: August 12, 2021                                   Respectfully submitted,

By: */s/ Steven N. Williams*
Steven N. Williams
Texas State Bar No. 21577625
swilliams@munsch.com
Winston O. Huff
Texas State Bar No. 24068745
whuff@munsch.com
William Zac Duffy
Texas State Bar No. 24059697
zduffy@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

4823-6607-4102v.2

James R. Ray, III
TX State Bar No. 24079746
jray@munsch.com
Connor Best
Texas State Bar No. 24097374
cbest@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
1717 West 6th Street, Suite 250
Austin, TX 78703-4777
(512) 391-6100 – Telephone
(512) 391-6149 – Facsimile

**ATTORNEYS FOR PLAINTIFF LONE STAR SCM SYSTEMS, LTD.**

4823-6607-4102v.2