**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **LONE STAR SCM SYSTEMS, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 6:12-CV-844-ADA** |
| | § | |
| **BLUEBIRD INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF LONE STAR SCM SYSTEMS, LTD.'S OPPOSED MOTION FOR LEAVE**
**TO FILE ITS SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**


# EXHIBIT A

# Second Amended Complaint

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **LONE STAR SCM SYSTEMS, LTD.** | **CIVIL ACTION NO.: 6:12-cv-844** |
| **Plaintiff,** | |
| **v.** | |
| **BLUEBIRD INC.** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Pursuant to Federal Rule of Civil Procedure 15, Plaintiff Lone Star SCM Systems, Ltd. files its Second Amended Complaint against Bluebird Inc. for infringing U.S. Patent Nos. 7,557,711 ("the '711 Patent"), 9,646,182 ("the '182 Patent"), 9,996,717 ("the '717 Patent") and 10,482,293 ("the '293 Patent") (collectively the "Asserted Patents"), demands a trial by jury and alleges as follows:

**PARTIES**

1. Plaintiff Lone Star SCM Systems, Ltd. ("Lone Star" or "Plaintiff") is a Texas limited partnership with a principal address of 4555 Excel Parkway, Suite 500, Addison, Texas  75001.

2. Defendant Bluebird Inc. ("Bluebird" or "Defendant") is a corporation organized and existing under the laws of South Korea with its headquarters located at 3F, 115, Irwon-ro, Gangnam-gu, Seoul, South Korea.  Bluebird does not reside in the United States.  Bluebird engages in business in Texas, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.   This proceeding arises, in part, out of business done in this state.  Bluebird has been served

1

with process and has appeared in this case.  Bluebird regularly conducts and transacts business in Texas, throughout the United States, and within the Western District of Texas.

3.    Bluebird makes, imports, offers to sell, sells, and uses the Accused Products, as defined below, in the United States, including in the State of Texas generally and, in particular, the Western District of Texas.

4.    Bluebird regularly contracts with customers regarding equipment or services that will be provided by affiliates on their behalf.

## JURISDICTION AND VENUE

5.    This action arises under the Patent Laws of the United States, namely, 35 U.S.C. §§ 1 et seq.  This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    Bluebird is subject to this Court's general and specific personal jurisdiction because it has minimum contacts within the State of Texas and the Western District of Texas and, pursuant to due process and/or the Texas Long Arm Statute, Bluebird has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Western District of Texas.  Further, Bluebird regularly conducts and solicits business within the State of Texas and within the Western District of Texas, and Lone Star's causes of action arise directly from Bluebird's business contacts and other activities in the State of Texas and in the Western District of Texas.  In addition, Bluebird provides software and support to its end users, including end users in Texas of Bluebird's products that infringe the Asserted Patents, through its Korean-based internet website (such as, for example, its "Business Optimizing Solution" or "BOS" software).

2

7.     Venue is further proper because Bluebird is not a resident in the United States, and it has committed and continues to commit acts of patent infringement, including making, using, offering to sell, and/or selling Bluebird RFID products ("Accused Products"), including, but not limited to, its Handheld UHF RFID Reader Sled, the RFR900 and RFR900S, its Fixed RFID Reader, the FR900, and its Desktop RFID Readers, the DR900 and DR901 products in Texas and in the Western District of Texas, and/or importing Accused Products into Texas and this district, including by Internet sales and sales via resellers, distributors, and other channels, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this district. Additionally, jurisdiction over Bluebird in Texas is proper under the stream of commerce theory, as Bluebird established a regular distribution channel through which it purposefully directed sales to Texas. Bluebird provided the Accused Products to nationwide distributors who it knew, or should have known, would sell the Accused Products to purchasers in Texas.  Still further, Bluebird has software that it makes available for downloading to end users of its devices.  On information and belief, Bluebird provides software pursuant to a software licensing agreement with end users in the Western District of Texas.

## BACKGROUND

### A.  John Volpi's Legacy of Innovation

8.     John Volpi is a prolific inventor and engineer, having been issued more than forty U.S. patents.  Volpi worked with a technology startup company called Veroscan, Inc ("Veroscan").  While working with Veroscan, Volpi conceived and reduced to practice a

4811-2645-3758v.1

number of ideas involving the use of radio frequency identification ("RFID") technology to track items, resulting in over 20 patents, including the Asserted Patents.[1]

9.      Veroscan developed RFID technologies, but it never successfully made, sold or offered for sale any products.   In 2010, Veroscan ceased its research and development activities, and instead focused on maintaining and continuing to build its portfolio of patented RFID technology.  Veroscan was reorganized and became Medical IP Holdings, LP.  Later, acknowledging that the patented technologies applied to the entire scope of supply chain management, Medical IP Holdings changed its name to Lone Star SCM Systems, LP.

**B.  RFID Technology**

10.      RFID technology is at the center of the Asserted Patents and the Accused Products here.  RFID uses electromagnetic fields to identify and track tags attached to objects.  A RFID tag consists of a tiny radio transponder: a radio receiver and transmitter. When triggered by an electromagnetic interrogation pulse from a RFID reader, the tag transmits digital data back to the reader.

11.       "Bulk reading" is a strategy for interrogating multiple tags at the same time. A group of tagged items are read completely from one single reader position at one time. Bulk reading is a possible use of HF ("High Frequency") (ISO 18000-3), UHF ("Ultra-High Frequency") (ISO 18000-6) and SHF ("Super High Frequency") (ISO 18000-4) RFID tags.  A group of tags has to be illuminated by the interrogating signal just like a single

---

[1] In addition to Mr. Volpi, Jimmy D. Laferney and William C. Montgomery also assisted in developing some of the inventions contained in the Asserted Patents, and each is also named as a co-inventor on each patent.

tag.  However, if any of the tags are shielded by other tags, they might not be sufficiently illuminated to return a sufficient response.

12.      A related scanning technology is referred to as Near Field Communication, or "NFC."  NFC limits the range of communication to within approximately 10 centimeters, or 4 inches.  NFC is simply a type of RF scanning technology that functions at close proximity to a sensor or tag.  NFC often operates at the 13.56 MHz frequency band, which is the specific frequency band of high frequency RFID.  NFC is a particularly useful technology for electronic payment systems.

13.      The inventions developed by Volpi added features for RFID readers  such as position sensors, multiscan, coherent signal processing, or a user interface, including a touchscreen and display.

**C. Asserted Patents**

1.  U.S. Patent 7,557,711

14.      On July 7, 2009, the U.S. Patent and Trademark Office (USPTO) issued the '711 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination.  A copy of the '711 Patent may be accessed from the USPTO's   Public   PAIR   website,   as   well   as   from   the   following   URL: https://www.freepatentsonline.com/7557711.html,   and   is   incorporated   herein   by reference.  The '711 Patent was originally assigned to Veroscan, which later assigned the patent to Medical IP Holdings, now known as Lone Star.  The '711 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

4811-2645-3758v.1

15.     The '711 Patent is generally directed to interrogation systems and methods of discerning RFID objects.  The interrogation system includes a sensing subsystem configured to provide a signal having a signature representing a presence of a RFID object.  The interrogation system also includes a control and processing subsystem configured to discern a presence of a RFID object from the signal and a position sensor configured to provide a location of the RFID object.

2.  U.S. Patent No. 9,646,182

16.     On May 9, 2017, the USPTO issued the '182 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '182 Patent may be accessed from the USPTO's Public PAIR website, and may also be accessed by selecting the following URL: https://www.freepatentsonline.com/9646182.htmland, and is incorporated herein by reference.   The '182 Patent was originally assigned to Veroscan, which later assigned the patent to Medical IP Holdings, now known as Lone Star.  The '182 Patent claims priority back to Application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

17.     The '182 Patent is generally directed to an interrogator having an antenna designed to receive first and second signals from first and second RFID objects.  The interrogator also includes a control and processing subsystem configured to discern RFID objects from the first and second signals as the antenna moves with respect to the objects.

3.   U.S. Patent No. 9,996,717

18.    On June 12, 2018, the USPTO issued the '717 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '717 Patent may be accessed from the USPTO's Public PAIR website, and may also be accessed by selecting the following URL: https://www.freepatentsonline.com/9996717.html, and is incorporated herein by reference.    The '717 Patent was assigned to Medical IP Holdings, now known as Lone Star.  The '717 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

19.    The '717 Patent is generally directed to an interrogation system that includes an antenna designed to receive first and second signals from first and second objects.  The interrogation system also includes a control and processing subsystem configured to discern a presence of the first and second objects from the first and second signals, as the objects move with respect to the antenna.

4.   U.S. Patent No. 10,482,293

20.    On November 19, 2019, the USPTO issued the '293 Patent entitled "Interrogator and Interrogation System Employment the Same" after a full and exhaustive examination.  A copy of the '293 Patent may be accessed from the USPTO's Public PAIR website, and may also be accessed by selecting the following URL: https://www.freepatentsonline.com/10482293.html, and is incorporated herein by reference. The '293 Patent was assigned to Medical IP Holdings, now known as Lone Star.  The '293 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

21.     The '293 Patent is generally directed to an interrogator having an antenna designed to receive a signal from a RFID object.  The interrogator further includes a control and processing subsystem configured to discern the presence the RFID object from the signal.  Finally, the interrogator includes a user interface having a touchpad and a display embodied in a portable configuration.

### D.  Bluebird's RFID Products

22.     Bluebird is a global manufacturer of industrial devices, including both handheld and fixed RFID readers.  Bluebird has approximately 3,000 customers located in 120 different countries, including in the United States and in Texas.   Bluebird manufactures, sells and offers for sale a broad range of products including RFID readers and NFC devices.  Bluebird introduced its line of handheld RFID readers in 2016, and it released its line of fixed, desktop readers in 2020.

23.     Bluebird's handheld and fixed RFID readers and NFC devices can be found in retail stores, warehouses and distribution centers where they are used to read RFID tags quickly and accurately and increase efficiency for real-time asset tracking and inventory management.  For example, according to Bluebird's internet website, 5,000 units of its BP30 handheld computer, which includes NFC functionality, have been deployed with a "Tier 1 Department Store in the U.S."  In addition, Bluebird's Tunnel/Box type RFID readers are installed on conveyors or process lines at manufacturing sites and distribution centers.   These devices can reach RFID tags on items and assist with inventory management and defect inspection.   Finally, Bluebird's Desktop/POS RFID Readers can be installed on retail store counters where they can assist in sales status

management.  They are also used in hospitals to perform pharmaceutical and blood sample management.

24.    Among Bluebird's products that infringe one or more of Lone Star's patents are its Handheld UHF RFID Reader Sled, the RFR900 and RFR900S, its FR900 Fixed RFID Reader, the FR900, its Desktop RFID Readers, the DR900 and DR901, and its NFC devices, including its line of Touch Mobile Computers (such as, for example, the EF550, EF550R, CF550, HF550, VF550, HF450, EK430, VF550 iBio, EF501, EF501R, EF500, EF500R, EF500 iBio, EF401, and EF400) and its line of Rugged Tablet Computers (such as, for example, the RT104, RT103, RT101, RT080 and RT080 iBio).

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,557,711

25.    Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

26.    Lone Star is the owner of all rights, title and interest to the '711 Patent.  The '711 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

27.    Bluebird has had notice of the '711 Patent at least as early as the filing of this Complaint.

28.    Bluebird has been and now is infringing at least Claim 1 of the '711 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, singularly or in combinations with each other, that incorporate systems and methods according to the '711 Patent.  One example of the Accused Products that infringe Claim 1 of the '711

Patent includes the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

29.     For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is an interrogation system.

30.     Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a sensing subsystem configured to provide a signal having a signature representing a presence of a radio frequency identification (RFID) object.  In one embodiment, the sensing subsystem is comprised of an antenna connected to the RFID reader/writer module to provide a signal. The antenna receives a signal from a RFID object, and the antenna processes that signal to convert it into a new signal of a different wavelength or power intensity before relaying that signal to the Atmel processor.  The new signal has an electronic signature that represents the presence of a RFID object.  In another embodiment, the antenna is separate from the sensing subsystem, but is nonetheless configured to cooperate with the sensing subsystem to provide a signal representing the presence of a RFID object.

31.     The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a control and processing subsystem configured to discern a presence of said RFID object from the signal.

32.     Also, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer contains a position sensor (an accelerometer communicatively coupled to an embedded microprocessor) that provides a location of a tagged object based on the movement of the reader with respect to the tagged object.

33.     The Accused Products satisfy all limitations of at least Claim 1 of the '711 Patent.  Bluebird is thus liable for infringing the '711 Patent pursuant to 35 U.S.C. § 271. In addition, the Accused Products also infringe at least dependent claims 3, 5, 6, 8, and 15.

34.     In addition to infringing the '711 Patent directly, Bluebird also induces infringement of the '711 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '711 Patent.

35.     Bluebird further contributorily infringes the '711 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '711 Patent. The infringing Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

36.     As a result of Bluebird's infringement of the '711 Patent, both direct and indirect, literal and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

37.     Unless a permanent injunction is issued enjoining Bluebird and its agents, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '711 Patent, Lone Star will be greatly and irreparably harmed.

<u>COUNT II</u>
<u>INFRINGEMENT OF U.S. PATENT NO. 9,646,182</u>

38.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

39.     Lone Star is the owner of all rights, title and interest to the '182 Patent.  The '182 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

40.     Bluebird has had notice of the '182 Patent at least as early as the filing of this Complaint.

41.     Bluebird has been and now is infringing at least Claim 1 of the '182 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, either singularly or in combination with each other, that incorporate systems and methods according to the '182 Patent.

42.     One example of the Accused Products that infringe Claim 1 of the '182 Patent includes the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

43.     For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is an interrogator.

44.     Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer includes an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

4811-2645-3758v.1

45. The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer includes a control and processing subsystem (an embedded Atmel microprocessor communicatively coupled to a DSP integrated circuit) configured to discern the presence of a first and second objects from first and second signals, respectively, as said antenna moves with respect to said first and second objects.

46. The Accused Products satisfy all limitations of at least Claim 1 of the '182 Patent. Bluebird is thus liable for infringing the '182 Patent pursuant to 35 U.S.C. § 271. In addition, the Accused Products also infringe at least dependent claims 3, 4, 6, 10, 11, 15 and 16.

47. In addition to infringing the '182 Patent directly, Bluebird also induces infringement of the '182 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the Accused Products, which embody one or more of the inventions claimed in the '182 Patent.

48. Further, Bluebird contributorily infringes the '182 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '182 Patent. The Bluebird Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

49. As a result of Bluebird's infringement of the '182 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered

13

4811-2645-3758v.1

monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

50.     Unless a permanent injunction is issued enjoining Bluebird and its agents, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '182 Patent, Lone Star will be greatly and irreparably harmed.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 9,996,717**

51.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

52.     Lone Star is the owner of all rights, title and interest to the '717 Patent.  The '717 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

53.     Bluebird has had notice of the '717 Patent at least as early as the filing of this Complaint.

54.     Bluebird has been and now is infringing at least Claim 1 of the '717 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '717 Patent.   An example of Bluebird products that infringe at least Claim 1 of the '717 Patent includes, but is not limited to, Bluebird's fixed RFID Readers, such as, for example, the Bluebird FR900 Fixed RFID Reader.

55.     The Bluebird FR900 Fixed RFID Reader is an interrogation system:

14

56.     Further, the Bluebird FR900 Fixed RFID Reader has an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

57.     Further, the Bluebird FR900 Fixed RFID Reader has an embedded processor, a DSP IC and a RFID IC that serves as the control and processing subsystem configured to discern a presence of first object and second objects from first and second signals, as the first and second object move with respect to the antenna.

58.     The Accused Products satisfy all limitations of at least Claim 1 of the '717 Patent.  Bluebird is thus liable for infringing the '717 Patent pursuant to 35 U.S.C. § 271. In addition, the Accused Products also infringe dependent claims 2, 3, 4, 6, 8, 9 , 10 and 14.

59.      In addition to infringing the '717 Patent directly, Bluebird also induces infringement of the '717 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '717 Patent.

60.     Further, Bluebird contributorily infringes the '717 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '717 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

61.     As a result of Bluebird's infringement of the '717 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered

monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

62.     Unless a permanent injunction is issued enjoining Bluebird and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '717 Patent, Lone Star will be greatly and irreparably harmed.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,482,293

63.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

64.     Lone Star is the owner of all rights, title and interest to the '293 Patent.  The '293 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

65.     Bluebird has had notice of the '293 Patent at least as early as the filing of this Complaint.

66.     Bluebird has been and now is infringing at least Claim 1 of the '293 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '293 Patent.   One example of the Accused Products that infringe at least Claim 1 of the '293 Patent includes the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer products.

67.     For example, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer is a portable interrogator.

68.     Further, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has an antenna configured to receive a first signal from a first object.

69.     The Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a control and processing subsystem (an embedded microprocessor and DSP integrated circuit) configured to discern a presence of said first object from said first signal.

70.     Also, the Bluebird RFR900 RFID Reader Sled used in conjunction with the Bluebird EF401, EF501 or EF501R Touch Mobile Computer has a user interface including a touchpad and a display. The touchpad and display are embodied in a portable configuration with the control and processing subsystem and antenna.

71.     The Accused Products satisfy all limitations of at least Claim 1 of the '293 Patent.  Bluebird is thus liable for infringing the '293 Patent pursuant to 35 U.S.C. § 271. The Accused product also infringe at least dependent claims 7, 10, 15 and 16.

72.     In addition to infringing the '293 Patent directly, Bluebird also induces infringement of the '293 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the Accused Products, which embody one or more of the inventions claimed in the '293 Patent.

73.     Further, Bluebird contributorily infringes the '293 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '293 Patent. The Bluebird Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

74.     As a result of Bluebird's infringement of the '293 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Bluebird's infringing activities are enjoined by this Court.

75.     Unless a permanent injunction is issued enjoining Bluebird and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '293 Patent, Lone Star will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Lone Star respectfully requests that this Court enter:

A.     A judgment in favor of Lone Star that Bluebird has infringed the '771, '182, '717 and '293 Patents;

B.     A permanent injunction enjoining Bluebird and its officers, directors, agents, servants affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert therewith from infringing the '771, '182, '717 and '293 Patents;

C.     A judgment and order requiring Bluebird to pay Lone Star its damages adequate to compensate for the infringement of the '711, '182, '717 and '293 Patents, but

4811-2645-3758v.1

in no event less than a reasonable royalty for the use made of the inventions by Bluebird,

together with interest and costs as fixed by the court as provided under 35 U.S.C. § 284;

   D.   Any and all other relief to which Lone Star may show itself to be entitled.

**<u>DEMAND FOR JURY TRIAL</u>**

   Lone Star, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial

by jury of any issues so triable by right.

Dated:   December 13, 2022     Respectfully submitted,

                   By: *<u>/s/ Steven N. Williams</u>*
                   Steven N. Williams
                   Texas State Bar No. 21577625
                   swilliams@munsch.com
                   Winston O. Huff
                   Texas State Bar No. 24068745
                   whuff@munsch.com
                   William Zac Duffy
                   Texas State Bar No. 24059697
                   zduffy@munsch.com
                   **MUNSCH HARDT KOPF & HARR, P.C.**

                   500 N. Akard Street, Suite 3800
                   Dallas, TX 75201
                   Telephone: (214) 855-7500
                   Facsimile: (214) 855-7584

                   James R. Ray, III
                   TX State Bar No. 24079746
                   jray@munsch.com
                   Connor Best
                   Texas State Bar No. 24097374
                   cbest@munsch.com
                   **MUNSCH HARDT KOPF & HARR, P.C.**
                   1717 West 6th Street, Suite 250
                   Austin, TX 78703-4777
                   (512) 391-6100 – Telephone
                   (512) 391-6149 – Facsimile

                   **ATTORNEYS FOR PLAINTIFF LONE
                   STAR SCM SYSTEMS, LTD.**

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the foregoing document, Plaintiff Lone Star SCM Systems, Ltd.'s Second Amended Complaint For Patent Infringement via electronic mail on December 13, 2022 through the Court's electronic filing system.

/s/ *Steven N. Williams*
Steven N. Williams

20