IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **LONE STAR SCM SYSTEMS, LTD.,** § § § | |
| Plaintiff, § | Civil Action No: 6:21-cv-844-ADA |
| § | |
| vs. § | Jury Trial Requested |
| § | |
| **BLUEBIRD INC.,** § § | |
| Defendant. § § | |

**DEFENDANT BLUEBIRD INC.'S**
**REPLY CLAIM CONSTRUCTION BRIEF**

# Table of Contents

I.  INTRODUCTION                                                              1

II. DISPUTED CLAIM TERMS                                                      1

    A.  Term 1: "sensing subsystem"                                           1
    B.  Term 2: "position sensor"                                             4
    C.  Term 3: "provide / providing location"                                6
    D.  Term 4: "one of an observable and data"                                8
    E.  Term 5: "in close unobstructed proximity"                              9
    F.  Term 6: "position marker"                                             10
    G.  Term 7: "RFID sensing subsystem"                                      11
    H.  Term 8: "multiscan, coherent signal processing"                       12
    I.  Term 9: "adaptive integrating filter"                                 13
    J.  Term 10: "radio frequency shield therebetween"                        13
    K.  Term 11: "touchpad"                                                   14
    L.  Term 12: "portable configuration"                                     14

III. CONCLUSION                                                              15

# Table of Authorities

*Aptalis Pharmatech, Inc. v. Apotex Inc.*, 718 F. App'x 965, 971 (Fed. Cir. 2018) ........................ 7

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 537 F.3d 1379, 1383 (Fed. Cir. 2008) ................ 6

*ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009).................................... 7

*Lowe v. ShieldMark Inc*., No. 2021-2164, 2022 WL 636100 at *6 (Fed. Cir. Mar. 4, 2022).... 15

*Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ......................... 8

*Trs. of Columbia Univ. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) ........................ 11

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)...... 7

*Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017)................. 15

*Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 858 (Fed. Cir. 2014) .............................. 3

*Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)...................... 8

*United States ex rel. Gage v. Rolls-Royce N. Am. Inc.*, No. A-16-cv-803 SS, 2018 U.S. Dist. LEXIS 23541, at *15 (W.D. Tex. Feb. 13, 2018) .................................................................. 3

## I.     INTRODUCTION

The Court should reject Lone Star's proposed claim constructions which attempt to interpret key claim terms to broaden the scope of the asserted claims of the Asserted Patents. The Asserted Patents use well-known technology, i.e., RFID Technology, to track surgical instruments and disposable items in a sterile, surgical environment. Lone Star now tries to assert these same patents against Bluebird outside the narrow surgical field.

The Court should reject Lone Star's proposed claims constructions and adapt Bluebird's proposed constructions which are set out in Bluebird's Opening Claim Construction Brief (ECF No. 53) and below.[1]

## II.     DISPUTED CLAIM TERMS

### A.     Term 1: "sensing subsystem"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "sensing subsystem"<br><br>'711 Patent (claims 1, 3, 5, 8)<br>'182 Patent (claims 3, 4)<br>'717 Patent (claims 3, 4) | Bluebird agrees with Zebra Technologies' argument that the term "sensing subsystem" is a means-plus-function term and the proposed constructions under 35 U.S.C. § 112(f).<br><br>If "sending subsystem" is not a means-plus-function term, then Bluebird proposes the following construction:<br><br>"part of an interrogator system with the ability to perceive an object by detecting a radio frequency signal and the ability to perceive an object by detecting metal" | Section 112(f) does not apply.<br><br><br><br>"one or more components configured to detect and convert a signal representing an object from one format to another format" |

---

[1] Bluebird has already acknowledged that there has been extensive claim construction briefing submitted to this Court in the related Zebra Tech and Honeywell Actions, and Bluebird has already adopted and incorporated many of the same claim constructions put forth by Zebra Tech and Honeywell to streamline the claim construction process in the present action. Bluebird has not tried to circumvent the Court's page limits on briefing set forth in the Court's April 4, 2023 Standing Order Governing Proceedings (OGP) 4.3 – Patent Cases, and expects Lone Star to similarly incorporate by reference certain arguments set forth in its briefing submitted in the Zebra Tech and Honeywell Actions.

The parties agree that further construction is needed for this term and dispute whether the term "sensing subsystem" must be able to sense both RF signals and metal (as proposed by Bluebird and Honeywell), or whether it is broad enough to sense any type of signal (as proposed by Lone Star) and convert from one format to another.

Lone Star argues that Bluebird/Honeywell's construction, which requires metal detection, is improper because claim 1 of the '711 Patent does not say the "sensing subsystem" can detect metal. (ECF No. 55 at p. 8). Self-servingly, however, Lone Star claims that "sensing subsystem" must be able to detect an RFID object by detecting RF signals. (*See* ECF No. 55 at p. 8).[2] Lone Star admits that (1) its proposed construction (that includes "signals" without specifying RF signals) is too broad, and (2) a "sensing subsystem" must be able to detect at least RF signals. Importantly, since the specification teaches that "the purpose of the 'sensing subsystem' is generally to sense RFID signal[s]" (*see* ECF No. 55 at P. 11), which both parties agree is the case, then the specification equally teaches that the purpose of the "sensing subsystem" must also be to sense metal for the same reasons. *See* '711 Patent at 6:36-39 ("To address the above-discussed deficiencies of the prior art, the present invention provides an interrogator for use in discerning metal and radio frequency identification (RFID) objects."). The "Abstract," "Technical Field of the Invention," and "Summary of the Invention" all describe the alleged inventive interrogator as capable of sensing both RF signals and metal. *Id.* at Abstract; 1:14-19; 6:39-45; 6:52-56; 7:1-5; 7:19-24.

In its opening brief, Bluebird/Honeywell explained how the patentee limited this term

---

[2] Asserted claim 3 of the '182 Patent ***does not*** say the "sensing subsystem" must detect RF signals. Even in view of claim 3 of the '182 Patent, Lone Star specifically asserts that "[t]he purpose of the 'sensing subsystem' is generally to sense RFID signal[s] and to communicate its presence to the other components of the interrogation system or interrogator." (ECF No. 55 at 11).

2

by (1) repeatedly describing the "present invention" as able to sense both RF signals and metal, and (2) implicitly defining "sensing subsystem" as a subsystem capable of sensing both RF signals and metal.  Lone Star failed to respond to these points, acknowledging that Bluebird/Honeywell's summary of the specification is accurate and conceding the argument as to this term.  *See United States ex rel. Gage v. Rolls-Royce N. Am. Inc.*, No. A-16-cv-803 SS, 2018 U.S. Dist. LEXIS 23541, at *15 (W.D. Tex. Feb. 13, 2018) ("Gage has failed to respond to this argument and has therefore conceded Rolls-Royce's issue preclusion argument.").

Lone Star also argues that Bluebird/Honeywell's proposed construction would render claim 2 of the '711 Patent superfluous. (ECF No. 55 at pp. 8-9). Lone Star appears to be arguing claim differentiation which fails for two reasons. First, claims 1 and 2 of the '711 Patent differ in scope under Bluebird/Honeywell's proposed construction, so claim differentiation does not apply. *See Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 858 (Fed. Cir. 2014). While claim 2 says that the "sensing subsystem" is configured to "provide a signal having a signature representing a presence of a metal object," it also says the position sensor is "configured to provide a location of said metal object." The position sensor of claim 1 is not required to do that, making claim 2 different (and narrower) in scope. Thus, claim differentiation simply does not apply to help Lone Star. *See id.* Second, even if claim differentiation applied (which it should not), that doctrine "is not a hard and fast rule, but instead a rule of thumb that does not trump the clear import of the specification." *Id.* (quotation omitted). For the reasons Bluebird and Honeywell explained in their opening briefs, the specification requires that a "sensing subsystem" be operable to sense RF signals and metal, which remains true even if claim differentiation applied here.

Lone Star makes no other arguments supporting its position so that the term "sensing

subsystem" should be construed as capable of detecting both an RF signal and metal.

     B.     Term 2: "position sensor"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "position sensor"<br><br>'182 Patent, (claims 2, 18)<br>'711 Patent (claims 1, 4, 5, 9, 10, 16)<br>'717 Patent (claim 2) | sensor that determines when it is in close proximity to a position marker | a component that detects a position of an object based on movement of a position sensor |

Lone Star's response indicates that the issues involving this term appear to be narrowed. Bluebird/Honeywell framed the original key dispute as whether the claimed "position sensor" determines *its position* relative to a position marker (as proposed by Bluebird/Honeywell) or whether the claimed "position sensor" determines *the position of an object* (as proposed by Lone Star). (ECF No. 53 at 15-16). Lone Star appears to have abandoned its construction by declining to defend its construction that a "position sensor" detects a "position of an object." In fact, Lone Star now argues that the "position sensor" determines *the location of an interrogator* (of which the "position sensor" is a part). (ECF No. 55 at 13).

More specifically, Lone Star argues that (1) the position sensor is "located within (or a part of) the interrogator," and (2) "the position sensor detects the position of the interrogator." (ECF No. 55 at 13). Together, these admissions mean that Lone Star *agrees* with Honeywell's construction that the position sensor detects its own position, not the position of an object. (*See* ECF No. 53 at 16 (Bluebird explaining that the position sensor provides "the relative location of the position sensor (the interrogator) to a position marker")).

Given Lone Star's admission that Bluebird/Honeywell's proposed construction is correct in that respect, the only question that remains is whether the "position sensor" detects

4

its absolute position or determines its position relative to a position marker. The intrinsic record provides no support for a position sensor that provides its absolute position, and Lone Star previously admitted to this Court explicitly that GPS (absolute position) is outside the claim scope. (Zebra Tech Action, ECF No. 65 at 26). Rather, as Bluebird described in detail in its opening brief, the specification goes to great lengths to describe that the claimed "position sensor" works in conjunction with a "position marker" so that a relative position can be determined.[3] (ECF No. 53 at 15-17).

Lone Star makes only one argument against Bluebird/Honeywell's proposed construction: that it allegedly "eliminate[s]" or "reads out" preferred embodiments which is not true. (ECF No. 55 at 14). Lone Star fails to identify a single embodiment that is allegedly "read[] out" by Bluebird/Honeywell's proposed construction.

If Lone Star it trying to argue that Bluebird/Honeywell's proposed construction does not work with claim 1 of the '711 Patent then that argument misses the mark. First, the claim language is not an "embodiment," so Lone Star's argument and the case law it cites are irrelevant. Second, Bluebird/Honeywell explicitly addressed the fact that claim 1 of the '711 Patent incorrectly claims that the position sensor provides the location of an object. Claim 1 of the '711 Patent stands in stark contrast with claim 16 of the '182 Patent, which correctly claims that the **control and processing subsystem** provides the location of a detected object (based on the predetermined location of a position marker and input from the position sensor and sensing

---

[3] Lone Star argues that "[b]y describing the position sensor as 'an inertial type,' the patentee described that the position sensor works by gathering data based on the movement of the sensor." (ECF No. 55 at 12-14). That is wrong because the specification says the position sensor is ***not*** limited to an "inertial type." '711 Patent at 22:44-48. And that is how it is claimed. *Compare* '711 Patent asserted independent claim 1 ("position sensor") *with* '711 Patent unasserted dependent claim 9 ("wherein said position sensor is an inertial position sensor").

subsystem). Both claims cannot be correct—either the position sensor provides the location of an object (which it does not) or the control and processing subsystem provides the location of an object (which it does). While that means claim 1 of the '711 Patent is invalid, "[c]ourts cannot rewrite claim language" even when it is incorrect. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 537 F.3d 1379, 1383 (Fed. Cir. 2008). Lone Star failed to respond to these points.

C.   Term 3: "provide / providing location"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "provide / providing location"<br><br>'182 Patent (claims 2, 16, 18, 22)<br>'711 Patent (claims 1, 16)<br>'717 Patent (claims 2, 8, 19)<br>'293 Patent (claim 2) | providing a relative location of an object to a position marker | Plain and ordinary meaning |

The parties disagree whether further construction is required. Bluebird/Honeywell explained why clarification of this term is needed, and as with other disputed terms, Lone Star also failed to address Bluebird/Honeywell's arguments at all. Specifically, Lone Star did not respond to Bluebird/Honeywell's arguments (*see* ECF No. 53 at 17) that:

- Providing "a location" of an object could include almost anything (*e.g.*, within RF range, longitude and latitude coordinates, etc.), and thus clarifying the metes and bounds of the term is required:

- Lone Star appears to have agreed that providing an absolute position is outside the claim scope in its briefing in the Zebra Tech Action (*see* Zebra Tech Action, ECF No. 65 at 26, where Lone Star argued GPS systems would be outside the claim scope), but seems to have now changed positions; and

- Lone Star's proposal of the plain and ordinary meaning contradicts the Asserted Patents' consistent teachings that a ***relative*** location of an object is

6

provided, specifically, relative to the location of a position marker. Because Lone Star failed to respond to these arguments, Bluebird/Honeywell (and the Court) do not know whether Lone Star believes "within RF range" constitutes "providing a location," why Lone Star has changed positions, or whether Lone Star is taking the position that the claims cover providing an absolute position (much less how that would work or where that is disclosed or even hinted at in the intrinsic record).

Lone Star simply argues that lexicography and disclaimer do not apply here, but Bluebird/Honeywell need not argue lexicography or disclaimer when the specification (i.e., intrinsic evidence) demonstrates that the term needs clarification to provide context and scope that might be helpful to a jury. *See, ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009) ("[N]ot only is the written description helpful in construing claim terms, but it is also appropriate to rely heavily on the written description for guidance as to the meaning of the claims." (quotation omitted)). Lone Star's position that a claim term should not be construed absent lexicography or disclaimer is incorrect (and contrary to several of its other proposed constructions). *See also, Aptalis Pharmatech, Inc. v. Apotex Inc.*, 718 F. App'x 965, 971 (Fed. Cir. 2018) (rejecting argument that "the prosecution history is irrelevant to the claim construction question here because there is no clear and unmistakable disavowal of claim scope" because "the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented" (cleaned up)). In other words, the entire purpose of claim construction is to capture the scope of the actual invention, which includes making sure the claim language does not "become divorced from what the specification conveys is the invention." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011); *see also Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed.

Cir. 2016) ("The only meaning that matters in claim construction is the meaning in the context of the patent.").

In this case, the inventors did not invent, disclose, describe, or claim an interrogator that can provide the absolute position of an object. Lone Star offers nothing to contradict that fact. Instead, the alleged invention describes using an interrogator with a position sensor to determine a location of an object *relative to a position marker*. There is simply no way to conclude otherwise without jumping far outside the context of the intrinsic evidence.

D.     Term 4: "one of an observable and data"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "one of an observable and data"<br><br>'711 Patent (claim 7)<br>'182 Patent (claims 7, 19)<br>'717 Patent (claims 7, 18)<br>'293 Patent (claim 11) | detected signal and stored data | one of a characteristic or quality that can be detected, and/or stored information |

The parties agree further construction is needed for this term but it appears as if the parties' dispute has been narrowed. The parties agree that the "data" portion of this term means stored data/information but the remaining question is what "observable" means.

Lone Star's response confirms that it has improperly conflated "observable" with "stored data." The problem with doing so is that only stored data could then satisfy both portions of this term under Lone Star's proposed construction, which cannot be correct. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("[T]he terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous.").

For example, Lone Star argues that "position marker information" is an observable.

(ECF No. 55 at 19). The Asserted Patents do not say this. Although the specification is vague on how to characterize something like "position marker information," the predetermined location of a position marker (which could be "position marker information") would be stored data, not an observable because the specification teaches (1) a position marker acts as a reference point to allow a relative location of an object to be determined, so it makes sense that (2) the predetermined location of the position marker (*e.g.*, on a patient's navel and knee) would be stored data that allows the interrogator to create a "'position-unique' mapping of the patient." '711 Patent at 19:20-24.

Regardless, the Asserted Patents teach generally combining something detected (an observable signal) with something stored (data). Bluebird/Honeywell's construction remains true to the teaching of the Asserted Patents and includes all embodiments, whereas Lone Star's construction is confusing, potentially excludes embodiments, and runs afoul of established case law.

E.   Term 5: "in close unobstructed proximity"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "in close unobstructed proximity"<br><br>'182 Patent (claims 1, 17)<br>'717 Patent (claims 1, 15)<br>'293 Patent (claim 5) | a first object and a second object in close proximity without obstructions to signals sent by the first and second objects | arranged next to, or near one another and without the presence of anything blocking one object from another object |

All the parties agree further construction is needed for this term. In its opening brief, Bluebird incorporated Honeywell and Zebra Tech's arguments. The key points are that Lone Star's construction would (1) exclude embodiments and (2) thwart the central purpose of the Asserted Patents (*i.e.*, detecting surgical items left inside a patient). During prosecution, the patentee added this term to distinguish the instant claims from prior art that disclosed a system

9

with a *structure* between two objects that *blocked* those objects' *signals* from being received by the interrogator. Therefore, the proper construction of this term should reflect that the Asserted Patents disclose an interrogator that does not require that sort of "structure" between objects to discern the objects. In other words, the Asserted Patents disclose an interrogator that can detect signals from two objects without a structure that blocks signals from the objects in place, which is what Bluebird's (Honeywell's and Zebra's) construction does.

F.     Term 6: "position marker"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "position marker"<br><br>'182 Patent (claims 2, 18) | marker placed at a predetermined location that can be sensed by a position sensor | Plain and ordinary meaning |

The parties disagree whether further construction is required. It is not clear what Lone Star believes to be the plain and ordinary meaning of "position marker," and Lone Star offers no clarification. Lone Star quotes claim language, but that language provides no clarity— it merely says a position marker "cooperates" with the control and processing subsystem to provide a location of two objects "in accordance with at least one position marker." (ECF No. 55 at 22 (*quoting* claims 2 and 18 of the '182 patent)). That language provides no clarity on the meaning of "position marker" (if it means something different than how Bluebird/Honeywell has proposed construing the location-sensing terms, including this one).

Lone Star argues the asserted claims do not require the position marker to be placed at a predetermined location or sensed by only the position sensor. While the claims themselves do not include that language, according to the Asserted Patents, the control and processing subsystem provides a relative location of a detected object only if the position marker is (a) in a predetermined location, and (b) sensed by a position sensor. (*See* ECF No. 53 at 22). No other system is

10

disclosed or even contemplated by the Asserted Patents. Allowing "position marker" to remain un-construed opens the door to mischief whereby the claims may "become divorced from what the specification conveys is the invention." *See, Retractable Techs.,* 653 F.3d at 1305; *see also Trs. of Columbia Univ.*, 811 F.3d at 1363 ("The only meaning that matters in claim construction is the meaning in the context of the patent."). Accordingly, the Court should adopt Honeywell's construction.

G. Term 7: "RFID sensing subsystem"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "RFID sensing subsystem"<br><br>'182 Patent (claim 4)<br>'717 Patent (claim 4) | part of an interrogator system with ability to perceive an object by detecting a radio frequency signal | one or more components configured to detect and convert a signal representing a RFID object from one format to another format |

The parties agree further construction is needed for this term. Lone Star's response on this term makes two incorrect statements. First, Lone Star argues that Bluebird/Honeywell's proposed construction is "overly limiting." (ECF No. 55 at 24). That's ironic given that a simple reading of the parties' two constructions above confirms that Bluebird/Honeywell's proposed construction is actually broader than Lone Star's proposal, making Lone Star's proposal the "limiting" proposal. Second, Lone Star claims that "Bluebird's proposed construction eliminates the possibility of the RFID sensing subsystem being able to convert signal formats." (ECF No. 55 at 24). It does not. Bluebird/Honeywell's proposed construction remains silent on signal conversion because this technology is not a requirement of an "RFID sensing subsystem." In other words, Bluebird/Honeywell's proposed construction means that part of an interrogator system that can perceive an object by detecting a radio frequency signal is an "RFID sensing subsystem," even if that subsystem can do other things.

11

In fact, Lone Star appears to admit that a signal converter (like a Digital to Analog Converter, or DAC) that could convert a signal from one format to another "*may* be included" in an RFID sensing subsystem, but it is not a required component. *Id*. (emphasis added). Lone Star is correct that signal conversion is an optional feature that *may* be included. The Court should thus reject Lone Star's construction because it makes what is arguably an optional feature into a mandatory part of a claim term.

H.   Term 8: "multiscan, coherent signal processing"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| "multiscan, coherent signal processing"<br><br>'711 Patent (claims 6, 18)<br>'182 Patent (claim 6)<br>'717 Patent (claims 6, 17)<br>'293 Patent (claim 10) | Plain and ordinary meaning | comparing information from a plurality of signals from multiple scans of an object to determine a presence of the object |

The parties disagree whether further construction is required. Again, Lone Star offers no legal or factual reason, and no evidence or explanation, for why this term needs construction. This term does not require construction.

Lone Star claims that extrinsic evidence supports its construction, but all Lone Star cites is a dictionary that says "multi" means multiple. (ECF No. 55 at 25-26). "Multi" is just a prefix of a single word of the claim term to be construed and Lone Star provides *no explanation* for why the other limitations in its proposed construction are requirements of this term, namely (1) "comparing" information, (2) a "plurality of signals," (3) multiple scans "of an object," and (4) "determin[ing] the presence of an object." Lone Star claims its construction is "consistent with" the specification, which it is not (*e.g.*, the specification does not say anything about "comparing" information), but even if it were, Lone Star offers no legal

12

or factual justification for importing those limitations into this claim term.

Lone Star's proposed construction is another attempt to redefine a term to imply modern aspects to an old concept and should be rejected.

I. Term 9: "adaptive integrating filter"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| adapting integrating filter<br><br>'711 Patent (Claim 7)<br>'182 Patent (Claim 7)<br>'717 Patent (Claim 7)<br>'293 Patent (Claim 11) | Plain and ordinary meaning | Plain and ordinary meaning |

The parties agree that the term "adaptive integrating filter" should be given its plain and ordinary meaning.

J. Term 10: "radio frequency shield therebetween"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| radio frequency shield therebetween<br><br>'182 Patent (claim 4)<br>"717 Patent (claim 4, 16) | Plain and ordinary meaning | a structure situated between that inhibits radio frequency from being transmitted or received |

Lone Star proposes that the term "radio frequency shield therebetween" means "a structure situated between that inhibits radio frequency from being transmitted or received." Bluebird proposes that the term maintain its plain and ordinary meaning. Lone Star's proposed construction implies that the radio frequency shield completely inhibits the radio frequency from being transmitted or received, but failing to account for partial shielding disclosed in the

13

specification of the Asserted Patents. See, 27:22-26. Lone Star's proposed construction should be rejected and the term should be given its plain and ordinary meaning.

K.    Term 11: "touchpad"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| Touchpad<br><br>'182 Patent (claim 11)<br>'717 Patent (claim 10)<br>'293 Patent (claims 1, 17) | Plain and ordinary meaning | an input device having a tactile sensor that is part of a user interface that allows a user, e.g., to select a mode of operation, and/or to enter and request data or information |

The parties disagree whether further construction is required. Lone Star offers no legal or factual support for its construction and ignores Bluebird/Honeywell's argument that Lone Star's proposed construction would exclude a preferred embodiment, thereby conceding that point. (ECF No. 53 at 27). As Bluebird/Honeywell described in their opening briefs (*see id.*), Lone Star is improperly attempting to "modernize" this claim by redefining a "touchpad" as a "touchscreen." There is no reason "touchpad" needs further construction, and Lone Star offers none. The plain and ordinary meaning of "touchpad" should control.

L.    Term 12: "portable configuration"

| Term | Bluebird's Proposed Construction | Lone Star's Proposed Construction |
|---|---|---|
| portable configuration<br><br>'293 Patent (claims 1, 17) | Plain and ordinary meaning | an integrated or attached handheld arrangement |

The parties disagree whether further construction is required. Lone Star argues that "portable configuration" should be construed to mean "an integrated or attached handheld arrangement." ECF No. 55 at 28. Lone Star does not provide any justification for limiting the term to a "handheld arrangement" and does not argue lexicography or disavowal.

Lone Star cites to certain figures arguing that the "portable RFID devices are shown as being handheld (as opposed to devices that are fixed or mounted permanently to an immovable object). ECF No. 55 at 28. However, Lone Star does not provide any reason for limiting the claims to enbodiments in the figures. *See, Lowe v. ShieldMark Inc.*, No. 2021-2164, 2022 WL 636100 at *6 (Fed. Cir. Mar. 4, 2022)("[E]very figure in the specification depicts tape with shoulders … [H]owever, that does not necessarily require us to narrowly limit the claimed invention to those figures."); *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017)("'[I]t is the claims, not the written description, which define the scope of the patent right.' … [A] claim is not limited to inventions looking like those in the drawings." (internal citations omitted)).

Lone Star's dictionary definitions highlight the errors in its proposed construction. *See*, ECF No. 55 at 28. The primary definition of "portable" as cited by Lone Star is "capable of being transported or conveyed." *Id*. An object that is "capable of being transported or conveyed" is not necessarily handheld.

Lone Star does not deny that it is trying to redefine "portable" as "handheld," but something that is portable need not be handheld. Because Lone Star provides no factual or legal justification for departing from the plain and ordinary meaning of this term, its proposed construction should be rejected.

## III. CONCLUSION

For these reasons, Bluebird requests the Court adopt Bluebird's proposed construction for the disputed terms and reject Lone Star's proposed constructions.

| | |
|---|---|
| Dated: July 6, 2023 | /s/   Kenneth K. Cho |

KENNETH K. CHO*
New Jersey Bar No. 017951990
New York Bar No. 2437085
CHO LAW GROUP, LLC
600 Sylvan Avenue, Suite 109
Englewood Cliffs, New Jersey 07632
Tel: (212) 468-5597
Fax: (212) 468-5599
kcho@cholawgrp.com

*Admitted p*ro hac vice*

D. BRADLEY KIZZIA
State Bar No. 11547550
KIZZIA JOHNSON, PLLC
1910 Pacific Ave., Suite 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165
jay@kjpllc.com
bkizzia@kjpllc.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2023, I electronically filed a true and correct copy of the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

Respectfully submitted,

*/s/ Kenneth K. Cho*
Kenneth K. Cho